UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAINT JOE HALLOWEEN EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MT. HAWLEY INSURANCE COMPANY and RENAISSANCE RE SYNDICATE 1458 LLOYD'S,<br><br>Defendants. | 26-cv-2376 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.

On August 14, 2026, this Court issued a "bottom-line" Order granting defendants' motion for partial judgment on the pleadings. See ECF No. 27. This Opinion sets forth the reasons for that Order.

## I. Background

Plaintiff Saint Joe Halloween Events, LLC ("Saint Joe") operates a Halloween thrill park in Pasco County, Florida, called Scream-A-Geddon.[1] See ECF No. 5 ("Compl.") ¶¶ 22-23. Faced with significant hurricane risk, Saint Joe purchased an insurance policy, Policy No. MWC0601976 (the "Policy"), from defendants Mt.

[1] For purposes of resolving the instant motion, the Court considers only "documents that qualify as part of [Saint Joe's] pleading, including (1) the complaint . . ., (2) documents attached to the [complaint], (3) documents incorporated by reference in or integral to the [complaint], and (4) matters of which the court may take judicial notice." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 306 (2d Cir. 2021) (internal quotation marks omitted).

Hawley Insurance Company and Renaissance Re Syndicate 1458 Lloyd's ("Insurers") for the period July 24, 2024, through July 24, 2025.[2] See id. ¶ 8. The Policy covers, among other things, loss of business income from hurricane damage to covered property. In particular, the Policy's Business Income (and Extra Expense) Coverage Endorsement provides that the Insurers "will pay for the actual loss of Business Income [Saint Joe] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.'" Ex. A at 46. The Business Income (and Extra Expense) Coverage Endorsement defines the "period of restoration" as "the period of time that [b]egins [u]nless specified elsewhere, 72 hours after the time of direct physical loss or damage" and "[e]nds on the earlier of: (1) [t]he date when the property at the Covered Property should be repaired, rebuilt[,] or replaced with reasonable speed and similar quality" or "(2) [t]he date when business is resumed at a new permanent location." Id. at 51.

The Policy separately defines a "named storm" in the Named Storm Definition Endorsement. A "named storm" is "a weather-related event involving wind that has been assigned a formal name by the National Hurricane Center, National Weather Service, World Meteorological Organization[,] or Central Pacific Hurricane

---

[2] Under the Policy, Mt. Hawley Insurance Company is responsible for 75% of covered losses and Renaissance Re Syndicate 1458 Lloyd's is responsible for 25%. See ECF No. 5-1 ("Ex. A") at 7.

Center." Id. at 35. "Under the terms of this definition," the Named Storm Definition Endorsement provides, "a 'named storm' begins at the time a warning is issued for the area in which the affected property is located and ends 24 hours after the termination of the last watch or warning issued for that area." Id.

On October 5, 2024, Governor Ron DeSantis issued Executive Order No. 24-214, which warned that a tropical storm named Milton "could become a major hurricane near or at landfall along the West Florida Coast" by the middle of the following week. Compl. ¶ 26 (internal quotation marks omitted). The following day, on October 6, 2024, Governor DeSantis issued Executive Order No. 24-215, which further warned that "Tropical Storm Milton will be at or near a catastrophic major hurricane upon landfall along the Florida West Coast, accompanied by life-threatening storm surge and severe wind gusts for the Florida Gulf Coast." Id. ¶ 32 (cleaned up). The same day, the Board of County Commissioners for Pasco County, Florida issued a Local State of Emergency for Pasco County, imposing mandatory and voluntary evacuations for October 7, 2024. See id. ¶ 34.

Hurricane Milton made landfall on October 9, 2024, "batter[ing]" Saint Joe's property. Id. ¶ 37. Saint Joe suffered "extensive seven-figure losses . . ., including physical loss of and damage to Covered Property [and] Business Income loss." Id. ¶ 38. Saint Joe notified the Insurers of its losses on October

14, 2024. See id. ¶ 40. By letter dated May 27, 2025, the Insurers informed Saint Joe that it was entitled to a total of $56,649 for its business income losses. See ECF No. 5-2 ("Ex. B") at 8. Rejecting Saint Joe's claim that the Named Storm Definition Endorsement modifies the "period of restoration," the Insurers calculated business income losses beginning October 12, 2024 – "72 hours after the time of direct physical loss or damage" when Hurricane Milton made landfall. Ex. A at 51; see Ex. B at 2. The Insurers sent another letter to Saint Joe on December 11, 2025, reiterating their coverage position. See ECF No. 5-3 ("Ex. C").

In response to the Insurers' letters, Saint Joe initiated the instant action bringing a single claim for breach of contract. See Compl. ¶¶ 48-52. The Insurers filed a motion for partial judgment on the pleadings, arguing that coverage does not extend to loss of business income sustained before October 12, 2024. See ECF No. 22. After the parties briefed the Insurers' motion, the Court held oral argument and issued a "bottom-line" Order granting the motion in its entirety. See ECF No. 27. The analysis that follows explains that Order.

## II. Legal Standard

The standard for granting a motion for judgment on the pleadings is "identical" to the standard for granting a motion to dismiss. XL Specialty Ins. Co. v. Fracht FWO Inc., 781 F. Supp. 3d 177, 180 (S.D.N.Y. 2025) (quoting Lively, 6 F.4th at

301). "To survive . . . a motion for judgment on the pleadings, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). "In determining whether a plaintiff has stated a plausible claim to relief, courts draw all reasonable inferences in the plaintiff's favor." Id. (internal quotation marks omitted).

## III. Analysis

The Insurers move for partial judgment on the pleadings on the basis that the Policy does not cover Saint Joe for business income losses prior to October 12, 2024, "72 hours after the time of direct physical loss or damage." Ex. A at 51; see ECF No. 24 ("Mem. in Support") at 24. Saint Joe solely argues that the Policy defines the "period of restoration" as beginning, "[u]nless specified elsewhere, 72 hours after the time of direct physical loss or damage," Ex. A at 51 (emphasis added), and the Named Storm Definition Endorsement specifies that the "period of restoration" begins "at the time a warning is issued for the area in which the affected property is located" - in Saint Joe's calculation, October 7, 2024, ECF No. 25 ("Mem. in Opp.") at 15 (internal quotation marks omitted). Saint Joe contends that the Named Storm Definition Endorsement, by its own terms, "CHANGES THE POLICY" and must modify the "period of restoration" because that is "[t]he only other provision[] in the Policy that

state[s] when a time period 'begins' and 'ends.'" Id. at 16, 18 (cleaned up). The Court disagrees.

The parties do not dispute that New York law applies.[3] See Mem. in Support at 12; Mem. in Opp. at 12. Under New York law, "insurance contracts are subject to the general rules of contract interpretation." J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 37 N.Y.3d 552, 561 (2021). To resolve a coverage dispute, the Court "look[s] to the specific language used in the relevant policies, which must be interpreted according to common speech and consistent with the reasonable expectation of the average insured at the time of contracting, with any ambiguities construed against the insurer and in favor of the insured." Id. (internal quotation marks and citations omitted).

Interpreting the Policy according to common speech, the Court concludes that the Policy is clear. The Named Storm Definition Endorsement does not reference the "period of restoration" or business income coverage, or otherwise specify that it modifies the "period of restoration." Instead, the Endorsement "changes the policy" by adding a different defined

---

[3] The Legal Action Conditions Endorsement in the Policy states that "[i]n the event of any litigation involving any matter arising out of or relating to this Policy, it is agreed that [the parties] shall submit to the jurisdiction of the New York state and New York federal courts." Ex. A at 40. "All matters arising out of or relating to this Policy shall be determined in accordance with the law and practice of the State of New York." Id.

term to the Policy ("named storm") and defining that term temporally. See ECF No. 26 ("Reply") at 3. Understanding the time period referenced in the Named Storm Definition Endorsement to define a "named storm" and not to modify the "period of restoration" does not, as Saint Joe contends, render the time period in the Endorsement surplusage. The term "named storm" is used three times in the Policy, including in the Declarations - Deductible Addendum, which states that the "peril deductible" is "5.00% of the Total Insurable Values Per Building . . . at the time of loss or damage subject to a minimum of $50,000 Per Occurrence for Named Storm." Ex. A at 8 (cleaned up); see Reply at 3. The length of a "named storm" may implicate the number of "occurrences" for the deductible, where an "occurrence" is "the total of all losses . . . sustained or commencing during a continuous 144 hour period." Ex. A at 28.

More fundamentally, as the definition of "period of restoration" confirms, the parties intended to make recoverable those business income losses sustained while damaged covered property is being restored. See id. at 51. Interpreting the "period of restoration" to begin when a mere storm warning has been issued is contrary to the parties' intent. Moreover, the Named Storm Definition Endorsement states that "[u]nder the terms of this definition, a 'named storm' begins at the time a warning is issued for the area in which the affected property is

located." Id. at 35 (emphasis added). The Named Storm Definition Endorsement does not state that the time period should be transplanted to other definitions beyond "this" one.

For all of these reasons, the Court finds that the Policy unambiguously excludes from coverage business income losses sustained prior to October 12, 2024. Because the "period of restoration" begins, "[u]nless specified elsewhere, 72 hours after the time of direct physical loss or damage," id. at 51, and the Named Storm Definition Endorsement does not specify that the "period of restoration" begins earlier, Saint Joe's business income losses before October 12, or 72 hours after Hurricane Milton made landfall, are not recoverable.[4]

## IV. Conclusion

The Court thus reconfirms its August 14, 2026 "bottom-line" Order granting the Insurers' motion for partial judgment on the pleadings. See ECF No. 27. Saint Joe's claim for loss of business income sustained before October 12, 2024, is dismissed. The remainder of the case will continue in accordance with the prior scheduling orders.

New York, NY
September 15, 2026

JED S. RAKOFF, U.S.D.J.

[4] To the extent there is ambiguity, although the Court finds none, "unless specified elsewhere" relates to other issues not otherwise specified here.